UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

BONNIE A.,

                Plaintiff,                    Case No. 3:25-cv-00588-YY

        v.                             OPINION AND ORDER

COMMISSIONER, SOCIAL SECURITY
ADMINISTRATION,

                Defendant.

_____

YOU, Magistrate Judge.

Plaintiff Bonnie A.[1] seeks judicial review of the Commissioner's final decision denying social security disability benefits. Plaintiff asserts the Administrative Law Judge improperly rejected the opinions of the state agency medical consultant and consultative examiner. The district court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020). With that standard of review applied, the Commissioner's decision is AFFIRMED.

_____

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the nongovernmental party in this case.

## I.    Standard Regarding Evaluation of Medical Opinion Evidence

When evaluating medical opinion evidence for claims filed on or after March 27, 2017, ALJs must apply 20 C.F.R. § 404.1520c for Title II claims and 20 C.F.R. § 416.920c for Title XVI claims. *Revisions to Rules Regarding the Evaluation of Medical Evidence* (*Revisions to Rules*), 82 Fed. Reg. 5844, *available at* 2017 WL 168819 (Jan. 18, 2017). Under these regulations, ALJs no longer "weigh" medical opinions, but rather determine which are most "persuasive." 20 C.F.R. §§ 404.1520c(a)-(b), 416.920c(a)-(b). To that end, controlling weight is no longer given to any medical opinion. *Revisions to Rules*, 82 Fed. Reg. at 5867-68; *see also* 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the Commissioner evaluates the persuasiveness of medical opinions based on (1) supportability, (2) consistency, (3) relationship with the claimant, (4) specialization, and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. §§ 404.1520c(a), (c)(1)-(5), 416.920c(a), (c)(1)-(5).

The factors of "supportability" and "consistency" are considered to be "the most important factors" in the evaluation process. 20 C.F.R. §§ 404.1520c(c), 416.920c(c). Supportability means the extent to which a medical source supports the medical opinion by explaining the "relevant . . . objective medical evidence." *Woods v. Kijakazi*, 32 F.4th 785, 791–92 (9th Cir. 2022) (citing 20 C.F.R. § 404.1520c(c)(1)). Consistency means the extent to which a medical opinion is "consistent . . . with the evidence from other medical sources and nonmedical sources in the claim." *Id.* (citing 20 C.F.R § 404.1520c(c)(2)).

An ALJ must articulate how persuasive the ALJ finds the medical opinions and explain how the ALJ considered the supportability and consistency factors. 20 C.F.R. §§ 404.1520c(a), (b), 416.920c(a), (b); *see Tyrone W. v. Saul*, No. 3:19-CV-01719-IM, 2020 WL 6363839, at *7 (D. Or. Oct. 28, 2020). "The ALJ may but is not required to explain how other factors were considered, as appropriate, including relationship with the claimant (length, purpose, and extent of treatment relationship; frequency of examination); whether there is an examining relationship; specialization; and other factors, such as familiarity with other evidence in the claim file or understanding of the Social Security disability program's policies and evidentiary requirements." *Linda F. v. Comm'r Soc. Sec. Admin.*, No. C20-5076-MAT, 2020 WL 6544628, at *2 (W.D. Wash. Nov. 6, 2020). However, ALJs are required to explain "how they considered other secondary medical factors [if] they find that two or more medical opinions about the same issue are equally supported and consistent with the record but not identical." *Tyrone W.*, 2020 WL 6363839, at *6 (citing 20 C.F.R. §§ 404.1520c(b)(2) and 404.1520c(b)(3)).

Furthermore, the court must continue to consider whether the ALJ's decision is supported by substantial evidence. *See Revisions to Rules*, 82 Fed. Reg. at 5852 ("Courts reviewing claims under our current rules have focused more on whether we sufficiently articulated the weight we gave treating source opinions, rather than on whether substantial evidence supports our final decision."); *see also* 42 U.S.C. § 405(g).

## II.     Discussion

The ALJ found the opinion by state agency medical consultant Andrew Glass, D.O., was "persuasive in part." Tr. 26. The ALJ rejected Dr. Glass's "limitations on standing and walking four hours, with alternation of sitting and standing every 20-30 minutes for comfort" because

they were "not consistent with the T12 compression fracture and normal lumbar findings." Tr. 26-27 (citing Tr. 718-19, 3652-53). Plaintiff argues the ALJ erred because a "T12 compression fracture seems exactly like an issue that might lead to a limitation to standing and walking." Pl. Br. 7.

Before addressing Dr. Glass's opinion, the ALJ provided a detailed discussion about plaintiff's T12 compression fracture. Specifically, the ALJ noted that imaging showed a T12 compression fracture after plaintiff suffered a fall in February 2016. Tr. 23 (citing Tr. 884). Plaintiff exhibited normal range of motion, and she did not return for follow up treatment until July 2020 when she reported back pain and discussed a plan to start physical therapy. *Id.* (citing Tr. 752, 886); *see also* Tr. 886 ("able to ambulate with steady gait," back pain improved to 6/10, "lumbar pain resolved"). In August 2020, plaintiff sought medical attention for pain and tingling in her legs, after aggravating her back injury by doing a lot of housework, lifting her son, and asking her brother to pop her back into place. *Id.* (citing Tr. 718). Plaintiff's physical exam was unremarkable and an x-ray showed no abnormalities. *Id.* (citing 718-19). Plaintiff was prescribed Norco as needed for up to three days. *Id.* (citing 719). In January 2021, plaintiff reported back pain after another fall and was prescribed meloxicam. *Id.* (citing Tr. 645). A thoracic spine x-ray revealed a "[c]hronic compression fracture at T12 with 30% loss of height anteriorly." *Id.* (citing Tr. 3652). Plaintiff attended physical therapy. *Id.* (citing Tr. 603-604) ("Patient continues to benefit from skilled PT services[.]"). In February 2021, plaintiff's bilateral hip strength was 4/5 and she received a lidocaine patch for left-sided low back pain with sciatica. Tr. 23-24; *see* Tr. 174 (lower extremity strength was 5/5 bilaterally in February 2021); Tr. 738 (strength was 5/5 in bilateral upper and lower extremities in August 2020). Plaintiff returned to the emergency room

Page 4 – OPINION AND ORDER

later that month and had significant tenderness in her left lumbar back without swelling, and was diagnosed with a muscle strain of the lower back. Tr. 24 (citing Tr. 625-66). Finally, the ALJ noted that, in September 2021, plaintiff began taking gabapentin for pain radiating down both legs. *Id*. (citing Tr. 511) (tingling/burning in both legs for past 2 days, denied pain in her back).

After discussing records pertaining to plaintiff's T12 compression fracture, the ALJ explained that the residual functional capacity addressed plaintiff's "spine impairment and the hip impairment through limited postural activities and the light exertional level." Tr. 24. The ALJ also found that a limitation of "[s]tanding and walking six hours of eight appropriately accommodates those spine conditions." Tr. 27. Although plaintiff disagrees with the ALJ assessment, if the evidence in the record is subject to more than one rational interpretation and the ALJ's interpretation was reasonable, this court must uphold the ALJ's conclusion. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").

The ALJ also found that Dr. Glass's limitations of standing and walking four hours, with alternating sitting and standing every 20-30 minutes, were inconsistent with the findings of consultative examiner Dr. Raymond Nolan, M.D., who observed normal strength, reflexes, sensation, and gait. Tr. 27 (citing 4083-84). Plaintiff argues that Dr. Glass's opinion is not inconsistent with Dr. Nolan's opinion and observes that Dr. Glass even found Dr. Nolan's opinion to be "mostly persuasive." Tr. 64. Plaintiff asserts that, where it is "clear that both doctors came to similar conclusions based upon their findings, using those findings against them is insufficient to show inconsistency." Pl. Reply 2. But the ALJ also discounted Dr. Nolan's opinion based on his "normal" findings. Tr. 28. Otherwise stated, the ALJ did not use the doctors'

Page 5 – OPINION AND ORDER

findings against each other; rather, the ALJ used Dr. Nolan's "normal" findings to discount both doctors' findings.

The ALJ found Dr. Nolan's opinion was "not persuasive overall" because the "wide range of 4-8 hours in standing and walking in an 8-hour day is vague" and "[e]xamination findings such as normal motor strength, gait, sensation, range of motion in most areas, and reflexes do not support limiting the claimant to four hours of standing and walking." Tr. 28. The ALJ also found there was no "explanation for the standing/walking limitations or the vague provision for breaks as needed for comfort." *Id.* The ALJ found that "additional postural limitations" were sufficient, concluding that "occasional postural limitations, sitting limitations, and lifting/carrying limitations are consistent with imaging studies." *Id.*

As plaintiff correctly observes, Dr. Nolan did not opine that plaintiff was limited to standing and walking for four to eight hours in an eight-hour day. Pl. Br. 7. Rather, Dr. Nolan opined that plaintiff "should be able to" stand and walk for between two and four hours in an eight-hour day with breaks as needed for comfort. Tr. 4085. Thus, the ALJ's finding that the "wide range" in Dr. Nolan's limitation was "vague" is unsupported by the record.

Nevertheless, the ALJ provided other, valid reasons for discounting Dr. Nolan's opinion. *See Dingman v. Saul*, 830 F. App'x 247, 248 (9th Cir. 2020) (finding error in evaluating medical opinion "was harmless in light of the ALJ's other specific and legitimate reasons for discounting [the doctor's] similar assessments"). As previously noted, the ALJ discounted Dr. Nolan's opinion because his "[e]xamination findings such as normal motor strength, gait, sensation, range of motion in most areas, and reflexes do not support limiting the claimant to four hours of standing or walking." Tr. 28. The ALJ also found that Dr. Nolan's limitation that plaintiff needed

Page 6 – OPINION AND ORDER

breaks for comfort was "vague." *Id.* Dr. Nolan's report consists largely of testing results and does not contain much narrative, including any explanation regarding what types of breaks were necessary, how long the breaks needed to be, and what type of "comfort" the breaks would be accommodating. Therefore, the ALJ did not err in finding Dr. Nolan's opinion was vague on this basis.

Finally, plaintiff argues the ALJ erred in pointing only to Dr. Nolan's normal examination findings and ignoring that there were "still a few abnormal findings" in assessing Dr. Nolan's opinion. But the ALJ did not cherry-pick portions of the record; the weight of the evidence supports the ALJ's conclusion. *See Holohan v. Massanari*, 246 F.3d 1195, 1207 (9th Cir. 2001) (finding ALJ's reliance on isolated instances of improvement to discount medical opinion—when the weight of the evidence did not reflect improvement—was not supported by substantial evidence). As the ALJ observed, Dr. Nolan's examination largely reflected normal findings, 5/5 strength, and no tenderness. Tr. 4083-85.

### CONCLUSION

The Commissioner's decision is AFFIRMED.

IT IS SO ORDERED.

DATED July 30, 2026.

/s/ Youlee Yim You

Youlee Yim You
United States Magistrate Judge

Page 7 – OPINION AND ORDER